UNITED STATES RAILROAD ADMINISTRATION et al., Appellants, v.
BOARD OF SUPERVISORS OF BUENA VISTA COUNTY
et al., Appellees.

DRAINS:   Assessments—Arbitrary or Double Assessment.   A railway
right of way may not, after being assessed for the full *benefits*
accruing to it because waters are diverted from the right of way,
be arbitrarily assessed for the *cost* of a highway bridge necessi-
tated by the improvement and located remote from the right of
way.

*Appeal from Buena Vista District Court.*—JAMES DeLAND,
Judge.

JUNE 22, 1923.

IN the district court, this was an appeal by the plaintiffs
from a drainage benefit assessment of $900.   Upon trial had, the
assessment was affirmed, and the plaintiffs have appealed from
such order.—*Modified and affirmed.*

*Price & Burnquist,* for appellants.

*Guy Mack,* for appellees.

PRESTON, C. J.—One of the peculiarities of this case, as
presented by the record, is that the appellant admittedly gets no
benefit of outlet and no benefit of drainage from the improve-
ment in question.   The drainage district is known as No. 106.
It discharges its outlet into a creek upon the right of way of
the appellant railroad.   This discharge carries the water into
the drainage system of District No. 34.   The plaintiff's right
of way runs in a northerly-southerly direction.   It traverses the
northeast 40 acres of a Section 11.   For a distance of 800 feet
upon its right of way, there was a little creek, the flow of which
was southerly.   This creek came upon the plaintiff's right
of way from the west, near the junction point of the railroad
and an east and west highway.   This east and west highway ran

between Section 2 and Section 11. The creek in question approached the highway from a northwesterly direction, and came to a close proximity on its north side at a point 350 feet west of the railroad. It ran easterly on the north side of the highway and parallel therewith, and turned abruptly south across the highway and within the plaintiff's right of way. Running south parallel with the railroad track for 800 feet, it then turned east across the right of way, at which point a railroad bridge was maintained by the plaintiff. This was the point selected by the drainage engineer for the outlet of the open ditch in District No. 106. Starting at this point, the open ditch was constructed in a straight diagonal line, northwesterly, crossing the east and west highway and the creek at the point where the creek turned its course eastward toward the railway track and parallel with the highway. The following diagram will be a sufficient indication of the general relation of the ditch and the former creek channel:

The result of this construction was that the ditch diverted the water of the creek from its roundabout course and carried it in a straight line to the point where the creek crossed the railroad right of way to the east. Whatever benefit the railroad company received was, therefore, the benefit of a diversion of

the natural flow of the creek away from its roadbed for a distance of 800 feet. There was no attempt to fill the creek channel, and more or less water is still carried through the same, more especially in time of floods. The engineer who served upon the appraisement commission for the drainage district, and whose estimate of benefits was accepted by the commission and by the board of supervisors, testified to the basis upon which the alleged benefit of $900 to the plaintiff was computed. This was, in brief, that the diversion of the flow of the creek away from the right of way of plaintiff for a distance of 800 feet was deemed to be a benefit to the extent of $300. The remaining $600 was assessed to the plaintiff as being one half of the estimated cost of a bridge which was built over the ditch where such ditch crossed the highway. This was the highway already referred to. Necessarily, the ditch had need to be bridged at every crossing of the highway. This crossing was 350 feet removed from the plaintiff's right of way. The theory put forth by the engineer was that the building of this bridge would save the railroad company the necessity of maintaining an existing bridge across the creek upon its right of way. The railroad company was maintaining such bridge along its right of way, and on the highway over the creek. It has maintained the same ever since. It must continue to maintain the same, in order to keep the highway passable, or it must substitute something in its stead which will be approximately as expensive. The contention of appellant is that the assessment of $600, as half the cost of the bridge upon the highway over the ditch in question, was purely arbitrary, and based upon no legitimate consideration of benefit.

Assuming that $300 was the fair measure of benefit received by the plaintiff from the diversion of the creek, we are at a loss to see how the construction of a bridge over the ditch at its junction point with the highway added anything to the diversion benefit included in the $300 assessment. The construction of the bridge *added* nothing to the benefits of the railroad company. The benefit to the railroad company was in the diversion of the water. The construction of the bridge was a necessary incident in the course of the improvement, and was a necessary part of the cost thereof. It was nothing more. The

same would be true of the cost of the right of way and of excavating the ditch thereon. These necessary expenses make up the sum total of the cost of the improvement upon which the approximation of the benefits is predicated. If there were no costs of improvement, there would be no assessable benefits. The plaintiff was liable for its equitable apportionment of benefits in the same manner as every other benefited property owner. Such apportionment was necessarily predicated upon the necessary costs of the improvement. This would necessarily include the costs of the right of way and of excavating and of the construction of necessary bridges. According to the testimony of the engineer, the commission charged against the railroad company $300, as its apportionment of benefits. It then added to this item of benefits the sum of $600, as being one half the estimated cost of the construction of a bridge across the highway 350 feet west of plaintiff's right of way. It did this on the theory that the actual construction of such bridge would in some way operate to the special financial advantage of the plaintiff, in that it would save the plaintiff from maintaining the existing bridge upon its own right of way. We can see no reason for saying that the building of this bridge operated to the financial advantage of the plaintiff railroad company in any other sense than that the excavation of the ditch operated to its financial advantage. Its benefit resulted from the diversion of the stream. That diversion was rendered quite complete by the excavation of the ditch. True, the excavation rendered the bridge necessary, and both became a part of the legitimate cost of the improvement, and the cost of both of these necessarily entered into the apportionment of benefits. Inasmuch, therefore, as the commission charged to the plaintiff its. full apportionment of benefits, and fixed it at $300, it was not warranted in charging against the plaintiff the specific cost, in whole or in part, of this part of the improvement. The estimate of the liability of the plaintiff company for the cost of this bridge was necessarily included in its apportionment of benefits, and the same cost was necessarily included in the apportionment of benefits of every property owner. If $300 was too small an estimate of the benefits received by the railroad company because of the diversion of the flow of the creek, it was open to the com-

mission to make it larger, and it was open to the appellees, on the trial below, to sustain the assessment, in whole or in part, by showing that the fair apportionment of benefits to the plaintiff was even $600 or $900, as the case might be. They did not do so. The testimony of the engineer was definite that the benefit of the diversion to the railroad company was only $300. We cannot escape this record.

It is to be noted, also, that the evidence does not establish the special benefit to the railroad company contended for, and does not establish that the construction of this bridge would have the effect of relieving the railroad company from maintaining its existing bridge. The evidence is quite conclusive that the existing bridge upon the plaintiff's right of way cannot be dispensed with except by the substitution of something different, in the way of a large culvert, the approximate cost of which would be the same as the cost of the existing bridge.

Up to this point, we have disregarded the testimony on behalf of the railroad company to the effect that $300 was an excessive apportionment. We are not disposed to interfere with that item. Approximation is the best that can be done in such a case. Nor can we sustain an arbitrary assessment of $600 as the supposed share of the railroad company for the cost of constructing a bridge, in addition to the benefits of the diversion. The net effect of the action of the commission was, first, to assess the *benefits* of the diversion of water; and secondly, to assess again the *cost* of that diversion. This was a clear duplication of assessment, and was beyond the power of the assessing body to impose. The $600 estimate, as half the cost of building the bridge, should be eliminated from plaintiff's assessment, and it is so ordered.

With this modification, the judgment will be affirmed. The costs of this appeal will be taxed, two thirds to appellee and one third to appellant.—*Modified and affirmed.*

EVANS, ARTHUR, and FAVILLE, JJ., concur.